UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY FRANCES KUNA, | Case No. CV 14-03556 AN |
| Plaintiff, | MEMORANDUM AND ORDER |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

Pursuant to the Court's Case Management Order, the parties have filed the Administrative Record ("AR") and a Joint Stipulation ("JS") raising four disputed issues. The parties have consented to proceed before the Magistrate Judge. The Court has carefully reviewed the parties' respective contentions in conjunction with the AR. This matter is now ready for decision.

**Issue #1**

Plaintiff contends the Administrative Law Judge ("ALJ") erred in assessing her mental residual functional capacity. (JS 3-8, 14-16.) Specifically, Plaintiff argues that the ALJ improperly rejected the opinions of her treating psychiatrist, Stephen Kramer, M.D., and the consultative psychiatric examiner, Stephen Erhart, M.D. (JS 3-8, 14-16).

Dr. Kramer

Dr. Kramer began treating Plaintiff in October 2011. (AR 508, 644-45.) Plaintiff

complained of trouble sleeping and focusing, but reported increased energy. (AR 644.) She had a long history of drug use and prostitution. (RT at 644.) Dr. Kramer diagnosed mood disorder, NOS and cocaine dependence, and noted that Plaintiff had been HIV positive since 1994. (RT at 645.) Dr. Kramer assessed Plaintiff with a global assessment of functioning ("GAF") score of 40, and prescribed medication. (RT at 644-45); *see* American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed., rev. 2000).[1] In November 2011, Plaintiff reported that she had a part-time job, but admitted that she sometimes missed taking her medication. (AR 640.) Dr. Kramer encouraged treatment compliance. (AR 640.) Plaintiff returned to Dr. Kramer a year later in November 2012. (AR 641-42.) Plaintiff reported feeling moody, irritable, and "speeded up." (AR 641.) Plaintiff also claimed that she had been fired two times due to conflict with others, but reported that she was attending school and had been sober for 11 months. (AR 641.) Dr. Kramer diagnosed Plaintiff with bipolar disorder, NOS and polysubstance dependence, and assessed Plaintiff with a GAF score of 50.[2] (AR 641-42.) Following an examination on December 14, 2012, Dr. Kramer reported that Plaintiff had not been taking her medication and appeared easily agitated. (AR 639.) Nevertheless, Plaintiff claimed she had a job managing a construction office and was sober. (AR 639.) On the same day of that examination, Dr. Kramer completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) for Plaintiff. (AR 635-37.) He assessed Plaintiff with "marked" limitations in the ability to carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with the public, supervisors, and co-workers, and respond appropriately to work pressures in a usual work setting and changes in a routine work setting, and

---

[1] A GAF score in the range of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. . . ." DSM-IV, at 32.

[2] A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). DSM-IV, at 32.

Page 2

"moderate" limitations in the ability to understand, remember, and carry out short, simple instructions, and understand and remember detailed instructions. (AR 635-36.) When asked for support for this assessment, Dr. Kramer replied that Plaintiff had a history of being terminated multiple times for conflicts with others. (AR 636.) When asked if alcohol or substance abuse contributed to Plaintiff's limitations, Dr. Kramer noted Plaintiff's history of substance abuse, but reported that Plaintiff had been sober for one year. (AR 636.) Dr. Kramer further found that Plaintiff was able to manage benefits in her own best interest. (AR 637.)

The ALJ agreed with Dr. Kramer's findings that Plaintiff suffers from a history of bipolar disorder, HIV, and polysubstance abuse (cocaine and alcohol). (AR 13.) While the ALJ assessed no exertional limitations, she found that Plaintiff did have limitations relating to her mental impairments. (AR 15.) The ALJ assessed Plaintiff with the residual functional capacity ("RFC") to occasionally understand, remember and carry out complex verbal instructions, occasionally interact with supervisors, and interact with coworkers conversationally, but found that Plaintiff must have a low stress work environment, without a fast-pace, high-volume, strict/explicit production quotas or contact with the public. (AR 15.) In making this assessment, the ALJ found that Dr. Kramer's opinion of incompetency, as indicated in his medical source statement, was entitled to "no weight." (AR 21, 635-36.)

The ALJ provided specific, legitimate reasons for rejecting Dr. Kramer's opinion. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996) (if a treating or examining physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record). The ALJ explained that Dr. Kramer's opinion was unsupported by his clinical findings and treatment records. (AR 21); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (noting that an ALJ need not accept a physician's opinion that is brief, conclusory and inadequately supported by clinical findings); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that the ALJ did not err in giving "minimal

1 evidentiary weight" to controverted treating source opinions that were "in the form of a
2 checklist," and lacked supportive objective medical findings). When asked to substantiate
3 his assessment, Dr. Kramer merely referenced Plaintiff's self-reported "history of being
4 terminated multiple times for conflict with others." (AR 21, 636.) However, at the time
5 of Dr. Kramer's assessment, Plaintiff actually had a job managing a construction office.
6 (AR 18, 21, 639.) In addition, the record shows that Plaintiff engaged in daily interactions
7 with others and her daily activities were not limited by her mental impairments. (AR 18,
8 21-22, 223, 226, 227, 500.) The ALJ reasonably concluded that Dr. Kramer's assessment
9 was based on Plaintiff's subjective claims of disability. (AR 21, 636, 639.) Because the
10 present record supports the ALJ's decision to discount Plaintiff's credibility, as discussed
11 below, the ALJ properly disregarded Dr. Kramer's opinion to the extent it was premised
12 on Plaintiff's subjective complaints. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th
13 Cir. 2001) ("[b]ecause the present record supports the ALJ in discounting [plaintiff's]
14 credibility . . . he was free to disregard [the treating physician's] opinion, which was
15 premised on her subjective complaints"); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.
16 1989).

17 In addition, the ALJ accorded "great weight" to the opinion of the non-examining
18 medical consultant, F. L. Williams, M.D. (AR 20, 22, 104-08.) In March 2012, after
19 reviewing Plaintiff's medical records, Dr. Williams opined that Plaintiff was capable of
20 performing simple, low stress work.[3] (AR 108.) His opinion was consistent with other

---

[3] Specifically, Dr. Williams found that Plaintiff was "moderately limited" in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. (AR 107-08.) Dr. Williams further found that Plaintiff was moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but that Plaintiff would be
(continued...)

Page 4

1 record evidence. (AR 19-20, 22, 499-500, 579, 592.) Thus, Dr. Williams' opinion
2 provides additional support for the ALJ's rejection of Dr. Kramer's opinion of disability.
3 *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1989) ("reports of the
4 nonexamining advisor need not be discounted and may serve as substantial evidence
5 when they are supported by other evidence in the record and are consistent with it");
6 *Tonapetyan*, 242 F.3d at 1149.

Dr. Erhart

Plaintiff asserts that the ALJ erred by improperly rejecting the opinion of the examining psychiatrist, Dr. Erhart. (JS 3-8, 14-16.)

Dr. Erhart completed a psychological evaluation of Plaintiff in December 2011. (AR 496-500.) Plaintiff reported that she was receiving treatment for bipolar disorder and admitted to a history of cocaine dependence. (AR 497.) Although Plaintiff claimed that she had been sober for four months, Dr. Erhart questioned the credibility of her statement, as Plaintiff acted in a disinhibited manner during the examination and displayed a conspicuous movement disorder (choreiform). (AR 497-500.) On the mental status examination, Dr. Erhart reported that Plaintiff's affect was labile, her thought content revealed recklesness and accompanying antisocial features of nonconformism, and her judgment was limited by naivete and impulsivity. (AR 499.) However, Dr. Erhart also found that Plaintiff's mood was euthymic, her speech was spontaneous and fluent, her orientation, registration and recall were intact, her thought process was normal, her judgment was intact, and hallucinations or perceptual disturbances were denied. (AR 499.) Dr. Erhart diagnosed Plaintiff with bipolar disorder (most recent episode, manic), cocaine dependence in partial remission, antisocial personality traits, and HIV, and assessed a GAF score of 60.[4] (AR 499.) Dr. Erhart opined that Plaintiff could understand,

---

[3] (...continued)
able to function satisfactorily and complete simple, repetitive tasks. (AR 103-04.)

[4] A GAF score in the range of 51-60 indicates moderate symptoms or moderate
(continued...)

Page 5

1 remember and perform instructions for simple and complex tasks, maintain focus and
2 concentration, respond to changes in a routine work setting, and conduct daily activities,
3 but was "moderately impaired" in the ability to respond to work pressure in a usual work
4 setting. (AR 500.) Despite making these findings, Dr. Erhart considered Plaintiff's
5 prognosis to be guarded. (AR 500.) He stated that Plaintiff's "most conspicuous
6 symptoms [were] personality features, a disinhibited interpersonal style, and a
7 [choreiform] movement disorder all of which could be disruptive in the workplace and
8 are not known to respond to treatment." (AR 500.) Dr. Erhart opined that Plaintiff was
9 "severely impaired" in the ability to interact with the public, coworkers and supervisors,
10 and "severely impaired" in the ability to comply with job rules, such as safety and
11 attendance, due to her "self-described features of contempt for social norms and a history
12 of belligerence towards peers." (AR 500.) Dr. Erhart further found that Plaintiff was not
13 competent to manager her own funds. (AR 500.)

14 The ALJ assigned partial weight to Dr. Erhart's opinion, but discounted Dr.
15 Erhart's findings that Plaintiff has severe limitations in the ability to interact with
16 supervisors and coworkers, and comply with job rules.[5] (AR 19, 500.) The ALJ explained
17 that Dr. Erhart's findings conflicted with the findings of other medical professionals. (AR
18 19-20); *see Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("The ALJ is
19 responsible for determining credibility and resolving conflicts in medical testimony.").
20 The ALJ noted that a psychological assessment conducted at the Los Angeles County
21 Sheriff's Department in December 2011, less than two weeks after Dr. Erhart's

---

[4] (...continued)
difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with peers or coworkers). DSM-IV, at 34.

[5] The ALJ's RFC assessment is consistent with Dr. Erhart's findings that Plaintiff is able to understand, remember and perform instructions for simple and complex tasks, maintain focus and concentration, respond to changes in a routine work setting, and conduct daily activities, but has moderate impairments in the ability to respond to work pressure in a usual work setting, and should avoid interaction with the public. (AR 15, 500.)

Page 6

examination, showed that Plaintiff did not appear internally stimulated. (AR 19, 579.) The examining psychiatrist, Cristina M. Alonzo, M.D., reported that Plaintiff was alert, cooperative, polite, pleasant and non-distractible. (AR 579.) Plaintiff's behavior was appropriate, her concentration and memory were good, her speech and psychomotor activity were normal, her mood was euthymic and her affect was congruent with her mood. (AR 579.) Dr. Alonzo's opinion, which was supported by independent clinical findings, constituted substantial evidence upon which the ALJ could properly rely to reject Dr. Erhart's opinion. *See, e.g., Tonapetyan*, 242 F.3d at 1149; *Andrews*, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"). The ALJ also properly cited the opinion of the state agency medical consultant, Dr. Williams, as it supported the ALJ's RFC assessment that Plaintiff could function satisfactorily and complete simple, low stress work. (AR 19-20, 22, 108); *see Tonapetyan*, 242 F.3d at 1149; *Andrews*, 53 F.3d at 1041.

In addition, the ALJ reasonably considered Plaintiff's lack of credibility in discounting Dr. Erhart's opinion. (AR 19); *see Tonapetyan*, 242 F.3d at 1149; *Fair*, 885 F.2d at 605. The ALJ found Plaintiff's report that she was sober at the time of Dr. Erhart's examination to be "dubious," because the record shows that Plaintiff was still using drugs prior to and after her psychiatric consultative examination. (AR 19, 499, 579, 580.) As discussed in more detail below, the ALJ's decision to discount Plaintiff's subjective complaints is supported by substantial evidence.

The ALJ further found that Dr. Erhart's opinion of severe work-related limitations conflicted with the objective medical evidence. (AR 19.) Despite Plaintiff's ongoing substance abuse, Plaintiff's mental status exam showed a euthymic mood, no overt mania or psychosis, normal speech, and intact orientation and memory. (AR 18-20, 499.) The GAF score of 60 assessed by Dr. Erhart suggested only moderate difficulty in social, occupational, or school functioning. (AR 19, 499); DSM-IV, at 34. Dr. Erhart also reported that Plaintiff was able to perform daily activities, maintain focus and

concentration, and perform simple and complex tasks. (AR 18-19, 500.) Such discrepancies were specific and legitimate reasons for rejecting Dr. Erhart's opinion regarding Plaintiff's limitations. *See, e.g., Bayliss*, 427 F.3d at 1216 (holding that contradiction between treating physician's assessment and clinical notes justifies rejection of assessment); *see also Tonapetyan*, 242 F.3d at 1149.

Accordingly, Plaintiff is not entitled to reversal or remand on Issue #1.

**Issue #2**

Plaintiff contends that the ALJ erred in failing to adequately consider Plaintiff's positive HIV status in the assessment of Plaintiff's RFC. (JS 17, 19.) Plaintiff asserts that because the ALJ found Plaintiff's history of HIV to be a severe impairment, the ALJ necessarily found that it significantly limited Plaintiff's ability to perform basic work activities. (JS 17, 19.)

Plaintiff cites no authority for the proposition that an ALJ must attribute specific limitations in the final RFC analysis to each of a claimant's severe impairments. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009) (rejecting plaintiff's argument that "a severe impairment, by definition, inhibits a claimant from engaging in 'basic work activities'"); *see also Jenkins v. Astrue*, No. 11-CV-798, 2012 WL 6516455, at *13 (E.D. Cal. Dec. 13, 2012) ("[I]t is well-established that an ALJ is not required to include all the limitations from the impairments deemed severe at step two in the final RFC analysis.") (citing *Bray*, 554 F.3d at 1228-29).

Further, the medical record supports the ALJ's RFC assessment and conclusion that Plaintiff has no exertional limitations. (AR 15.) Although Plaintiff has been HIV positive for 20 years, Plaintiff does not have AIDS, lab tests indicate that her HIV condition is stable, and she does not have any significant, HIV-related symptoms. (AR 16-18, 20-21, 285, 375, 401, 454-57, 526, 564, 592, 597, 628, 639, 642, 645.) While the examining internist, Mark R. Sobers, M.D., noted that Plaintiff has neuropathy of the right lower extremity, possibly related to her positive HIV, the neuropathy was under control with medication and did not interfere with Plaintiff's usual activities or chores.

1  (AR 592, 597.) Thus, the ALJ's RFC determination is supported by substantial
2  evidence.[6]

3  Plaintiff is not entitled to reversal or remand on Issue #2.

**Issue #3**

5  Plaintiff asserts that the ALJ improperly rejected her subjective symptom
6  testimony. (JS 19-22, 26.) The Court finds that the ALJ provided specific, clear and
7  convincing reasons for discounting Plaintiff's subjective complaints. (AR 16-20); *see*
8  *Burrell v. Colvin*, --- F.3d ---, 2014 WL 7398892, at *2 (9th Cir. Dec. 31, 2014); *Molina*
9  *v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ must give "specific, clear and
10 convincing reasons" for rejecting the claimant's subjective symptom testimony when
11 there is no evidence of malingering) (citation and internal quotation marks omitted)).

12 The ALJ found that Plaintiff offered varying and conflicting statements regarding
13 her cocaine use. (AR 19.) For example, at Plaintiff's administrative hearing in February
14 2013, Plaintiff testified that she stopped using cocaine in June 2011. (AR 37, 42.) She
15 also claimed that she was not using drugs when she underwent her consultative
16 psychiatric examination with Dr. Erhart on December 6, 2011. (AR 37-38, 42, 496.)
17 However, on December 9, 2011, just three days after Dr. Erhart's examination, Plaintiff
18 was arrested for drug possession. (AR 42-43.) When asked about her drug use during a
19 mental health examination at the Los Angeles County Sheriff's Department on December
20 14, 2011, Plaintiff reported that she had used crack cocaine "last week." (AR 19, 580.)
21 About a week after that exam, Plaintiff admitted that she had actually used cocaine on the
22 day she was arrested. (AR 579.) The ALJ properly relied on the inconsistencies in
23 Plaintiff's statements to discount Plaintiff's credibility. *See Tonapetyan*, 242 F.3d at 1148

---

[6] The Court notes that two of Plaintiff's treating physicians, Jesse Sanders, M.D. and Michael Soby, M.D., issued brief opinions that Plaintiff was disabled or significantly restricted in performing functional activities due to HIV and/or her neuropathy in her right leg. (AR 336, 400-02, 627-28.) The ALJ reasonably rejected these doctors' opinions as unsupported by the objective medical evidence and based primarily on Plaintiff's subjective complaints. (AR 17-18, 336, 400-02, 627-28); *see Bayliss*, 427 F.3d at 1217; *Tonapetyan*, 242 F.3d at 1149. Plaintiff does not challenge the ALJ's consideration of these doctors' opinions. (JS 19.)

Page 9

1  (ALJ may use "ordinary techniques of credibility evaluation" including considering
2  inconsistent statements and inconsistencies between the record and her statements);
3  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

4  The ALJ also properly took into account Plaintiff's documented history of medical
5  noncompliance. (AR 17-18, 21, 420, 639-40); *see Fair*, 885 F.2d at 603 (holding that
6  non-compliance with prescribed treatment is proper evidence relating to the credibility
7  of the claimant); Social Security Ruling 96-7p ("[T]he individual's statements may be
8  less credible if the level or frequency of treatment is inconsistent with the level of
9  complaints, or if the medical reports or records show the individual is not following the
10 treatment as prescribed and there are no good reasons for this failure.")

11 Further, the ALJ relied on the inconsistencies between Plaintiff's claimed disability
12 and admitted daily activities to support the adverse credibility determination. (AR 16, 19,
13 21); *see, e.g., Light v. Social Security Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)
14 (inconsistencies between testimony and conduct may be considered in weighing a
15 claimant's credibility); *Molina*, 674 F.3d at 1113 (explaining that even when participation
16 in everyday activities indicates some difficulty functioning, those activities "may be
17 grounds for discrediting the claimant's testimony to the extent that they contradict claims
18 of a totally debilitating impairment"). At the hearing, Plaintiff claimed that she was
19 unable to concentrate or sit for more than 10 minutes at a time, and that several days a
20 week she needs to stay in bed and avoid people, as she frequently has "bad days." (AR
21 16, 21-22, 39-41.) However, in her function report, Plaintiff admitted to daily interactions
22 with others. (AR 21, 227.) Plaintiff reported that she attends addiction counseling three
23 times a week and AA meetings five times a week, and participates regularly in personal
24 counseling sessions and NA meetings. (AR 21, 223, 226, 227.) Plaintiff takes public
25 transportation to these meetings. (AR 21, 226.) Plaintiff's doctors confirmed that Plaintiff
26 was able to perform activities of daily living without assistance. (AR 21, 393, 401, 498.)
27 The ALJ reasonably found that Plaintiff's reported limitations regarding her ability to
28 concentrate and interact with others conflicted with her admitted activities of daily living.

1  (AR 16, 21-22); *see Light*, 119 F.3d at 792; *Molina*, 674 F.3d at 1113.

2  Accordingly, reversal or remand is not warranted on the basis of Issue #3.

### Issue #4

Plaintiff contends that the ALJ failed to include all of Plaintiff's limitations in the hypothetical question presented to the vocational expert ("VE"). (JS 26-29.) This argument is premised on Plaintiff's claims raised in Issues #1, #2, and #3 (i.e., the ALJ improperly rejected the opinions of Dr. Kramer and Dr. Erhart, the ALJ failed to assess limitations related to Plaintiff's HIV impairment, and the ALJ improperly discounted Plaintiff's subjective complaints). As analyzed above, however, the ALJ's decision with respect to these issues is supported by substantial evidence. Thus, the limitations included in the ALJ's hypothetical question were consistent with Plaintiff's RFC and supported by the record. (AR 50-51.) Plaintiff has failed to show that the ALJ erred by posing an incomplete hypothetical question to the VE. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (a claimant fails to prove that the ALJ gave an incomplete hypothetical when the claimant simply restates his arguments challenging the ALJ's other findings concerning claimant's limitations); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence").

Accordingly, Plaintiff is not entitled to a reversal or remand based upon Issue #4.

### ORDER

The Court finds that the ALJ's determination of non-disability is free of legal error and supported by substantial evidence in the record. Therefore, Plaintiff's request for an order directing the payment of benefits or remanding this case for further proceedings is DENIED, and the Commissioner's request for an order affirming the Commissioner's

///

///

1 | final decision and dismissing the action is GRANTED. The clerk shall enter judgment,
2 | close the file and terminate all pending motions.

DATED: January 30, 2015

ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE